## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **PHILADELPHIA INDEMNITY** **INSURANCE COMPANY**, | § § § | |
| *Plaintiff,* | § § | |
| **VS.** | § § | **CIVIL NO. 5:17-cv-00083-FB** |
| **RENEW MINISTRIES f/k/a** **CELEBRATE LIFE CHURCH, INC.** **and TERRY R. KNIGHTEN**, | § § § § | |
| *Defendants.* | § § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT
## FOR DECLARATORY JUDGMENT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. § 2201, Plaintiff Philadelphia Indemnity Insurance Company ("Plaintiff" or "Philadelphia") files this First Amended Complaint for Declaratory Judgment, complaining of Defendants Renew Ministries, Inc. f/k/a Celebrate Life Church, Inc. and Terry Knighten. Plaintiff is filing this amended pleading as a matter of course, within two days of commencing this action with its filing of Plaintiff's Original Complaint for Declaratory Judgment. Therefore, no leave of court is required. Fed. R. Civ. P. 15(a)(1).

## I.

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1441(b), because complete diversity of citizenship exists between the Plaintiff and

the Defendant and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. Venue is proper in the Western District of Texas, San Antonio Division, because the Defendant's primary place of business is located in this District and Division.

## II.

### PARTIES

2.      Plaintiff Philadelphia Indemnity Insurance Company is a foreign insurance company with its principal place of business located in Bala Cynwyd, Pennsylvania. Philadelphia is duly authorized to engage in the business of insurance in the State of Texas, and does engage in such business in Texas.

3.      Defendant Renew Ministries, known as Celebrate Life Church, Inc. until it filed a certificate of assumed name and then a certificate of amendment with the Texas Secretary of State in May 2012, is a Texas not-for-profit corporation duly authorized to conduct business in Texas. Renew Ministries, formerly known as Celebrate Life Church, Inc. (hereinafter sometimes referred to as "Renew Ministries") does conduct business in Texas. It maintains its corporate headquarters and principal place of business in New Braunfels, Comal County, Texas. Renew Ministries may be served with process by serving Mike Foster, at 1209 Interstate Highway 35 South, #207, New Braunfels, Texas 78130, or at such other place where he may be found. Philadelphia requests issuance of citation upon Renew Ministries at this time. Service upon Renew Ministries can be made by certified mail, return receipt requested.

4.     Defendant Terry R. Knighten is an individual and a resident of New Braunfels, Comal County, Texas. Terry Knighten can be served at 456 Wilderness Way, New Braunfels, Texas 78132, or at such other place where he may be found

### III.
### FACTUAL BACKGROUND

5.     Pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, Philadelphia seeks a declaration of the parties' rights and duties under various policies of insurance Philadelphia issued to Renew Ministries, specifically as those policies relate to claims asserted in two underlying lawsuits pending in state district courts in Comal County, Texas.

## The Underlying Lawsuits

### A.     *The Arp Lawsuit*

6.     On October 18, 2016, Amy Arp commenced a lawsuit in state court in Comal County, Texas. Numbered and styled as Cause No. C2016-1722C, *Amy Arp v. Terry Knighten, Renew Ministries, Inc. and Celebrate Life Church, Inc.*, that lawsuit is pending before the 274th Judicial District Court of Comal County, Texas (the "Arp lawsuit").

7.     Plaintiff's Original Petition remains the plaintiff's live pleading in the Arp lawsuit. A true and correct copy of Plaintiff's Original Petition in the Arp lawsuit is attached to this pleading as **Exhibit** "**A**" and incorporated into this pleading for all purposes. It includes these substantive factual allegations:

> 9.     This lawsuit arises from numerous nonconsensual sexual assaults, advances, and encounters between Plaintiff and

Defendant Knighten spanning a ten (10) year period from approximately 2005 to the end of 2015 while Plaintiff was a parishioner of Defendants Renew and Celebrate Life seeking marital counseling from Defendant Knighten (Pastor and Board Member of Defendants Renew and Celebrate Life), as well as a volunteer and employee of Defendant. (Emphasis added.)

10.  Plaintiff, a parishioner of Defendants Renew and Celebrate Life since approximately 2003 at the age of 19, first sought counseling from Defendant Knighten for marital difficulties in approximately 2005. This marital counseling between Plaintiff and Defendant Knighten regarding Plaintiff's former marriage spanned the time period of 2005 - 2015.

11.  Shortly after the marital counseling began, Defendant Knighten began taking advantage of Plaintiff's trust and confidence forged as Plaintiff's marital counselor and Pastor, by making unwanted and nonconsensual sexual advances upon Plaintiff. First, in approximately 2005, Defendant Knighten requested that Plaintiff pull her shirt down while the two were unpacking children's church items on Defendants Renew and Celebrate Life's premises. Approximately six (6) months later Defendant Knighten had nonconsensual sexual intercourse with Plaintiff on Defendants Renew and Celebrate Life's premises.

12.  Such nonconsensual sexual encounters happened numerous times from the first two encounters in 2005 until the last incident of nonconsensual sexual intercourse, which again occurred on the premises of Defendants Renew and Celebrate Life on December 24, 2015. Such encounters and incidents happened on a monthly basis from 2014 - 2015 in Defendant Knighten's church office, and in Defendants Renew and Celebrate Life's classroom and church. Upon information and belief all such incidents occurred while Defendant Knighten was in the course and scope of his employment with Defendants Renew and Celebrate Life.

13.  At no time during Defendant Knighten's sexual assaults on Plaintiff did Defendants Renew and Celebrate Life take any actions to assist Plaintiff or otherwise prevent Defendant Knighten from continuing his sexual assaults on Plaintiff. Upon information and belief, Defendants Renew and Celebrate Life knew or should have known that Defendant Knighten was

sexually assaulting Plaintiff. Nevertheless, Defendants Renew and Celebrate Life failed to terminate Defendant Knighten. Instead, Defendants Renew and Celebrate Life negligently allowed the sexual assaults to continue without taking any corrective action, reporting any of the incidents to law enforcement, and failing to make its premises safe for its parishioners like Plaintiff.

Exhibit "A" at 3-4.

## B. *The Harvey Lawsuit*

8.     On October 18, 2016, Kristin Harvey commenced a lawsuit in state court in Comal County, Texas. Numbered and styled as Cause No. C2016-1723D, *Kristen Harvey v. Terry Knighten, Renew Ministries, Inc. and Celebrate Life Church, Inc.*, that lawsuit is pending before the 433rd Judicial District Court of Comal County, Texas (the "Harvey lawsuit").

9.     Plaintiff's Original Petition remains the plaintiff's live pleading in the Harvey lawsuit. A true and correct copy of Plaintiff's Original Petition in the Harvey lawsuit is attached to this pleading as **Exhibit** "**B**" and incorporated into this pleading for all purposes. It includes these substantive factual allegations:

9.     This lawsuit arises from a nonconsensual sexual assault occurring between Plaintiff and Defendant Knighten in October 2015 while Plaintiff was a parishioner of Defendants Renew and Celebrate Life seeking marital counseling from Defendant Knighten (Pastor and Board Member of Defendants Renew and Celebrate Life).

10.     Plaintiff, a parishioner of Defendants Renew and Celebrate Life since approximately 2003 at the age of 13, first sought counseling from Defendant Knighten for marital difficulties in approximately 2015.

11.     Shortly after the marital counseling began, Defendant Knighten, taking advantage of Plaintiff's trust and confidence

forged as Plaintiff's marital counselor and Pastor, began to make unwanted and nonconsensual sexual advances upon Plaintiff. First, in October 2015, while at Defendant Knighten's house. Defendant Knighten cornered Plaintiff and kissed her. Plaintiff did not consent to such actions.

12. On the next night, again in Defendant Knighten's home, Defendant Knighten entered a bedroom being occupied by Plaintiff, reached into Plaintiff's underwear, made unwanted contact with Plaintiff and sexually assaulted her.

13. At no time during Defendant Knighten's sexual assaults on Plaintiff did Defendant Renew take any actions to assist Plaintiff or otherwise prevent Defendant Knighten from continuing his sexual assaults on Plaintiff. Upon information and belief, Defendants Renew and Celebrate Life knew or should have known that Defendant Knighten was sexually assaulting Plaintiff. Nevertheless, Defendants Renew and Celebrate Life failed to terminate Defendant Knighten. Instead, Defendants Renew and Celebrate Life negligently allowed the sexual assaults to continue without taking any corrective action, reporting any of the incidents to law enforcement, and failing to make its premises safe for its parishioners like Plaintiff.

Exhibit "B" at 3-4.

10. The Arp lawsuit and the Harvey lawsuit both allege —

8. Defendants Renew and Celebrate Life were and are mere shams and shells organized and operated as the alter ego of individual Defendant Knighten for his personal benefit and advantage, in that individual Defendant Knighten has exercised total dominion and control over corporate Defendants Renew and Celebrate Life. [Knighten] is one of only three (3) directors and the main Pastor of the corporate Defendants Renew and Celebrate Life and, as such. Defendant Knighten has so intermingled his personal and financial affairs that corporate Defendants Renew and Celebrate Life were and are the alter ego of individual Defendant Knighten.

Exhibit "A" at 3; Exhibit "B" at 3.

11. The Arp Lawsuit and the Harvey Lawsuit assert the same causes of action against Terry Knighten ("Knighten"), alleging that he is liable for: (a) breach of fiduciary duty; (b) assault; (c) negligence and gross negligence; (d) Intentional infliction of emotional distress; and (e) sexual exploitation by a mental health services provider, in violation of section 81.001(2)(E) of the Texas Civil Practice and Remedies Code. *See* Exhibit "A," ¶¶ 15-23, at 4-7; Exhibit "B," ¶¶ 15-23, at 4-6.

12. The underlying lawsuits identify Renew Ministries and Celebrate Life Church, Inc. as separate parties. Both of the underlying plaintiffs assert the same causes of action against these two defendants, seeking damages for: (a) sexual exploitation by a mental health services provider, in violation of section 81.002 of the Texas Civil Practice and Remedies Code; and (b) negligent and grossly negligent hiring, supervising, training and retention of Knighten. *See* Exhibit "A", ¶¶ 24-29, at 7-9; Exhibit "B," ¶¶ 24-29, at 7-9.

13. Philadelphia is not a party to either of the underlying lawsuits.

**The Philadelphia Insurance Policies**

14. On or about June 1, 2011, Philadelphia issued a comprehensive policy of insurance, under number PHPK806951, to Celebrate Life Church dba Renew Church. That policy had a policy period of 12/16/2011 to 12/16/2012. A true and correct copy of the Declarations page for that 2011-2012 policy is attached as **Exhibit** "C."

15.     Philadelphia renewed that policy under number PHPK957101, for the succeeding one-year policy period of 06/01/2012 to 06/01/2013. A true and correct copy of the Declarations page for that 2012-2013 policy is attached as **Exhibit** "**D**."

16.     The policy was renewed again, for the following policy period of 06/01/2013 to 06/01/2014, under number PHPK1110916. A true and correct copy of the Declarations page for that policy is attached as **Exhibit** "**E**."

17.     In 2014, Philadelphia issued another policy renewal, under number PHPK1270218, with effective dates of 12/16/2014 to 12/16/2015. The Declarations page for that policy, a true and correct copy of which is attached as **Exhibit** "**F**," still identifies Celebrate Life Church dba Renew Church, as the named insured. On the 12/16/2015 expiration date of that policy renewal, Philadelphia issued an endorsement that extended the expiration date until 06/01/2016. A true and correct copy of that endorsement is attached as **Exhibit** "**G**."

18.     On or about June 1, 2016, Philadelphia renewed the policy again, under number PHPK1505125, with a policy period of 06/01/2016 to 06/01/2017. The Declarations page for that policy, a true and correct copy of which is attached as **Exhibit** "**H**" and incorporated into this pleading for all purposes.

19.     The Policy provides Commercial General Liability Coverage, with limits of insurance of $1,000,000 per occurrence for bodily injury and property damage coverage, and limits of $1,000,000 for personal and advertising injury liability. The policy also provides Professional Liability coverage with a limit of insurance of $1,000,000 for each professional incident and aggregate limits of $2,000,000.

Finally, the Policy provides Sexual Or Physical Abuse Or Molestation coverage, with limits of insurance of $1,000,000 for each "Abusive Conduct" and in the aggregate.

## A.   *Commercial General Liability Coverage*

20.   Each of the one-year policies identified in the preceding paragraphs 13 through 19 of this pleading contains a grant of general liability coverage for bodily injury and property damage through *Commercial General Liability Coverage Form*, CG 00 01 12 07, as follows:

> **SECTION I – COVERAGES**
>
> **COVERAGE A   BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> 1. **Insuring Agreement**
>
>    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:
>
>       **(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and
>
>       **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.
>
>       No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.
>
>    b. This insurance applies to "bodily injury" and "property damage" only if:
>
>       **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

> **(2)** The "bodily injury" or "property damage" occurs during the policy period....

*See* Exhibit "C," Commercial General Liability Coverage Form (CG 00 01 12 07).

21.     The above-quoted grant of commercial general liability coverage is subject to these exclusions, set out in either that same coverage form or in exclusionary endorsements entitled *Exclusion – Counseling Services* (form CG 21 57 07 98), and *Exclusion – Professional Liability Coverage* (form PI-RO-005 TX (11/06)):

> **2. Exclusions**
>
> This insurance does not apply to:
>
> **a. Expected Or Intended Injury**
>
> "Bodily injury" or "property damage" expected or intended from the  standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.
>
> \*   \*   \*
>
> This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of advisory services or counseling with respect to such issues as mental health, crisis prevention, social services or drug and alcohol rehabilitation or similar subjects.
>
> \*   \*   \*
>
> This insurance does not apply to:
>
> "Bodily injury", "property damage" or "personal and advertising injury" arising out of:
>
> **4.** Any actual or alleged negligent act, error or omission in the rendering of professional services to others, including counseling services, in your capacity as a religious organization. Professional services include but are not limited to the furnishing of food, beverages, medications or appliances in connection therewith.

22.     The *Commercial General Liability Coverage Form*, as modified by *General Liability Deluxe Endorsement: Religious Organization* (PI-RO-012 (11/06)), defines the various terms appearing in quotation marks, including the following:

**3.** "Bodily Injury":

    **a.** Means bodily injury, sickness or disease sustained by a person, and includes mental anguish resulting from any of these; and

    **b.** Except for mental anguish, includes death resulting from the foregoing (item **a.** above) at any time.

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

23.    The duty to defend under the *Commercial General Liability Coverage Form* extends only to "the insured." That coverage form, as modified by *General Liability Deluxe Endorsement: Religious Organization*, identifies who qualifies as an insured when the named insured is organized as a corporation, such as either Renew Ministries:

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy.

**SECTION II – WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

    **d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors….

**2.** Each of the following is also an insured:

    **a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

    **(1)** "Bodily injury" or "personal and advertising injury":

        **(d)** Arising out of his or her providing or failing to provide professional health care services.

\*   \*   \*

---

1. Any of your church members, but only with respect to their liability for your activities or activities they perform on your behalf.

2. Any:

    a. Trustee, official or member of the board of governors of the church; or

    b. Members of the clergy but only with respect to their duties as such.

\* \* \*

1. Each of the following is also an insured:

    a. **Medical Directors and Administrators -** Your medical directors and administrators, but only while acting within the scope of and during the course of their duties as such. Such duties do not include the furnishing or failure to furnish professional services of any physician or psychiatrist in the treatment of a patient.

    b. **Managers and Supervisors** - If you are an organization other than a partnership or joint venture, your managers and supervisors are also insureds, but only with respect to their duties as your managers and supervisors.

## B. *Professional Liability Coverage*

24. The grant of professional liability coverage is provided through *Religious Organization Professional Liability Coverage Form*, PI-RO-003 (11/06), as follows:

**SECTION I – COVERAGES**

**COVERAGE A   RELIGIOUS ORGANIZATION PROFESSIONAL LIABILITY**

**A. Insuring Agreement**

1. We will pay those sums that the insured becomes legally obligated to pay as "damages" arising out of a "professional incident" in the course of performing professional services for, or on behalf of, your religious organization to which this insurance applies. We have the right and duty to defend any "suit" seeking those "damages". We may at our discretion investigate and settle any "professional incident", subject to **SECTION IV – CONDITION K.**, any claim or "suit". But:

    a. The amount we will pay for "damages" is limited as described in **SECTION III – LIMITS OF INSURANCE**; and

    **b.** Our right and duty to defend ends when we have used up our applicable limit of insurance in the payment of judgments or settlements.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **SUPPLEMENTARY PAYMENTS** set forth below.

**2.** This insurance applies to "damages" only if:

    **a.** The "damages" result from a "professional incident" that takes place in the "coverage territory"; and

    **b.** The "professional incident" occurs during the policy period.

25. The Professional Liability coverage is subject to exclusions, set out in the coverage form, as modified by *Texas Changes Endorsement*, PI-RO-TX-1 (02/07), including the following:

**B. Exclusions**

This insurance does not apply to "damages":

**1.** Expected or intended from the standpoint of the insured. This exclusion is meant to apply to deliberate or intentional acts or "damages" which the insured could reasonably expect to result in "damages."

**23.** Arising out of:

    **a.** The actual or threatened physical or sexual abuse or molestation by anyone of any person while in the care, custody or control of any insured; or

    **b.** The negligent:

        **(1)** employment;

        **(2)** investigation;

        **(3)** supervision;

        **(4)** reporting to the proper authorities, or failure to so report; or

        **(5)** retention

    of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by **a.** above.

    **c.** The negligent failure to provide professional services or neglect of the therapeutic needs of a client, patient or other

---

person because of the conduct which would be excluded by paragraph **a.** above.

26. The duty to defend under the *Religious Organization Professional Liability Coverage Form* extends to "the insured." This includes the named insured, Renew Ministries, as well as the following persons:

**A.** . . . . Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors.

**B.** Each of the following is also an insured:

**1.** Your medical directors, board members and administrators, but only while acting within the scope of and during the course of their duties as such. Such duties do not include the furnishing or failure to furnish professional services of any physician or psychiatrist in the treatment of a patient.

**2.** Your "employees", other than your "executive officers", but only for acts within the scope of their employment by you or while performing duties related to the conduct of your organization.

**3.** Your volunteers, including church members, but only for acts within the scope of their duties related to the conduct of your organization.

**4.** Students in training, but only for acts within the scope of their duties related to the conduct of your organization.

**5.** Any social workers, teachers, "certified counselors", case managers, or "trained lay advisors" but only for acts within the scope of their duties related to the conduct of your organization.

27. The *Professional Liability Coverage Form* includes these definitions of the terms appearing in quotation marks:

**H.** **"Employee"** includes a "leased worker". "Employee" does not include a "temporary worker". Employee includes "ordained" clergy.

**O.** **"Ordained"** means an individual:

**1.** Invested with ministerial or priestly authority;

**2.** Authorized as a rabbi; or

**3.** Upon whom holy orders have been conferred by a religious authority.

**R.** **"Professional incident"** means any actual or alleged negligent:

1. Act;
2. Error; or
3. Omission

   in the rendering of professional services to others, including any counseling services, in your capacity as a religious organization. Professional services include the furnishing of food, beverages, medications or appliances in connection therewith.

   Any or all "professional incidents" arising from interrelated or series of acts, errors or omissions shall be deemed to be one "professional incident" taking place at the time of the earliest "professional incident".

## C. *Sexual or Physical Abuse or Molestation Vicarious Liability Coverage*

28. This grant of coverage is provided through *Sexual or Physical Abuse or Molestation Vicarious Liability Coverage Form (Claims-Made Version)*, PI-SO-007 (7/96), (the "SPAM" coverage form) as follows:

**SECTION I - COVERAGE**
**SEXUAL OR PHYSICAL ABUSE OR MOLESTATION VICARIOUS LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured is legally obligated to pay as "damages" because of "bodily injury" and "defense costs", to which this insurance applies, if the insured is alleged to be liable for another person's "abusive conduct", by reason of:

**(1)** the negligent:

**(a)** employment;

**(b)** selection;

**(c)** investigation;

**(d)** supervision;

**(e)** reporting to the proper authorities, or failure to so report; or

**(f)** retention;

---

of any "employee", volunteer or any other person or persons for whom the insured is or ever was legally responsible . . .

Subject to the above provisions, we have the right and duty to defend any "suit" seeking "damages" because of another person's "abusive conduct". However, we have no duty to defend the insured against any "suit" seeking "damages" to which this insurance does not apply. We may at our discretion, investigate any "abusive conduct" and settle any claim or "suit" that may result. . . .

**b.** This insurance applies to "damages" and "defense cost" because of "bodily injury" only if:

    **(1)** the "bodily injury" is caused by "abusive conduct" that takes place in the "coverage territory";

    **(2)** the "abusive conduct" did not occur before the Retroactive Date, if any, shown in the Declarations or after the end of the policy period; and

    **(3)** a claim for "damages" because of another person's "abusive conduct" is first made against any insured, in accordance with paragraph **c.** below, during the policy period or any Extended Reporting Period we provide under EXTENDED REPORTING PERIODS (Section V)….

**c.**  **(1)** A claim seeking "damages" will be deemed to have been made when notice of such claim is received and recorded by any insured or by us, whichever comes first.

    **(2)** All claims for "damages" because of the same incident or interrelated incidents of "abusive conduct" shall be:

        **(a**) Considered a single claim; and

        **(b)** Considered first made only during the policy period including the Extended Reporting Period, or during any prior or subsequent policy period in which the earliest claim arising out of such "abusive conduct" was first made. Such claims, whenever made, shall be assigned to only one policy (whether issued by this or any another insurer) and if that is this policy, only one limit of insurance shall apply.

29. The Declarations page for the SPAM coverage part does specify a Retroactive Date. For each of the Policies, the Declarations page for the SPAM coverage states:

RETROACTIVE DATE

This insurance does not apply to "Damages" and "Defense Costs" resulting from "Abusive Conduct" which occurred before the Retroactive Date, if any, shown here: **11/18/2011**

30. The SPAM coverage form identifies those entities and individuals that are insureds or qualify as insureds:

**SECTION II - WHO IS AN INSURED**

**1.** You are an insured.

**2.** Each of the following is also an insured:

**a.** your directors, but only for liability arising from their duties as your directors.

**b.** your "employees", but only for liability arising within the scope of their employment duties for you.

**c.** your volunteers, but only for liability arising within the scope of their volunteer duties related to the conduct of your organization; and

**d.** students in training, but only for liability arising within the scope of their duties related to the conduct of your organization.

31. The duty to defend the named insured's employees is limited by the *Employee Defense Coverage* endorsement, on form PI-SO-013 (02/05):

We will also pay on your behalf "defense costs" for an "employee" who is alleged to be directly involved in "abusive conduct" until such time as that individual is adjudicated to be a wrongdoer or enters a plea of no-contest.

32. The SPAM coverage form defines the terms in quotation marks, including these terms:

**2.** "Abusive conduct" means each, every and all actual, threatened or alleged acts of physical abuse, sexual abuse, sexual molestation or sexual misconduct performed by one person or two or more people acting together.

Each, every and all actual, threatened or alleged acts of physical abuse, sexual abuse, sexual molestation or sexual misconduct committed by, participated in by, directed by, instigated by or knowingly allowed to happen by one or more persons shall be considered to be one "abusive conduct" regardless of:

---

    **a.** the number of injured parties;

    **b.** the period of time over which the acts of physical abuse, sexual abuse, sexual molestation or sexual misconduct took place; and

    **c.** the number of such acts or encounters.

    "Abusive conduct" consisting of or comprising more than one act of physical abuse, sexual abuse, sexual molestation or sexual misconduct shall be deemed to take place, for all purposes within the scope of this policy, at the time of the first such act or encounter.

**4.** "Damages" means a monetary:

    **a.** judgment;

    **b.** award; or

    **c.** settlement,

but does not include fines, sanctions, penalties, punitive or exemplary damages or the multiple portion of any damages.

## D. *Excess and Umbrella Liability Coverage*

33. Philadelphia issued an excess liability policy to Celebrate Life Church dba Renew Church under number PHUB367883, with a policy period of 12/16/2011 to 12/16/2012.

34. Philadelphia then renewed that excess liability policy under number PHUB405441, with a policy period of 12/16/2012 to 12/16/2013.

35. Philadelphia subsequently issued an umbrella liability policy to Celebrate Life Church dba Renew Church under number PHUB443574, with a policy period of 12/16/2013 to 12/16/2014.

36. Philadelphia renewed that umbrella liability policy under number PHUB483684, with a policy period of 12/16/2014 to 12/16/2015.

37. Philadelphia then issued an endorsement to extend the expiry date of umbrella liability policy number PHUB483684, from 12/16/2015 until 06/01/2016.

38. Philadelphia issued another umbrella liability coverage, but to Renew Ministries, under number PHUB543355, with a policy period of 06/11/2016 to 06/01/2017.

39. The grants of coverage for the excess and umbrella liability coverages for bodily injury and property damage liability are provided through *Commercial Umbrella Liability Insurance Policy*, issued on form PI-CXL-001:

**1. Insuring Agreement**

We will pay on behalf of the insured the "ultimate net loss" in excess of the "applicable underlying limit," whether or not collectible, which the insured becomes legally obligated to pay as damages because of "bodily injury," "property damage" or "personal and advertising injury" to which this insurance applies.

**Bodily Injury and Property Damage**

**a.** This insurance applies to "bodily injury" or "property damage" only if:

**(1)** The "bodily injury" or "property damage" arising out of an "occurrence" takes place in the "coverage territory";]

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.a.** of **SECTION II – WHO IS AN INSURED** and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**b.** "Bodily injury" or "property damage which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.a.** of **SECTION II – WHO IS AN INSURED** or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of

that "bodily injury" or "property damage" after the end of the policy period.

**c.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.a.** of **SECTION II – WHO IS AN INSURED** or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

   **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

   **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

   **(3)** Becomes aware by any other means.

40.  The umbrella liability coverage is subject to several exclusions, including the following:

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

41.  The umbrella liability coverage form contains a section defining the terms appearing in quotation marks, including the following:

**15.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

42.  The coverage under each of the excess and umbrella liability policies is subject to similar exclusionary endorsements, entitled *Abuse Or Molestation Exclusion*, issued on different editions of form PI-CXL-007 TX. In the excess liability policies, the endorsement provides as follows:

This insurance does not apply to any liability, damage, loss, cost or expense arising out of:

**1.** The actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured; or

**2.** The negligent:

    **a.** Employment

    **b.** Investigation

    **c.** Supervision

    **d.** Reporting to proper authorities, or failure to so report; or

    **e.** Retention;

of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by **1.** above.

**3.** Any applicable coverage provided in the "underlying insurance."

For the purposes of this endorsement, abuse means an act which is committed with the intent to cause harm.

43. In the umbrella liability policies, the exclusionary endorsement reads as follows:

This insurance does not apply to any liability arising out of:

(a) The actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured; or

(b) The negligent:

    (i) employment

    (ii) investigation

    (iii) supervision

    (iv) reporting to proper authorities, or failure to so report; or

    (v) retention;

of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by (a) above.

For the purposes of this endorsement, abuse means an act which is committed with the intent to cause harm.

44. Finally, the excess liability and umbrella liability policies are subject to follow-form endorsements applicable to the underlying Professional Liability

Coverage. The endorsement in the excess liability policies, entitled simply *Follow Form Endorsement*, states as follows:

> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL EXCESS LIABILITY
>
> This policy is intended to include the Professional Liability Coverage Part, but only to the extent that coverage is provided for by the liability insurance listed in the Schedule of Underlying Insurance.
>
> This endorsement is subject to Condition 9, Maintenance of Underlying Insurance.

45. The follow-form endorsement in the umbrella liability policies is entitled *Professional Liability Follow Form Endorsement*. It adds this language to the insuring agreement:

> **COVERAGE – PROFESSIONAL LIABILITY**
>
> This policy is intended to include professional liability coverage.
>
> The professional liability insurance provided will follow the same provisions, exclusions and limitations that are contained in the applicable "underlying insurance" shown in the Schedule of Underlying Insurance unless otherwise directed by an endorsement to this policy.
>
> To the extent such provisions differ or conflict, the provisions of this policy will apply. However, the coverage provided under this policy will not be broader than that provided by the applicable "underlying insurance."
>
> Any per location or per project aggregate limit of insurance that is extended in the applicable "underlying insurance" shown in the Schedule of Underlying Insurance will not apply to the coverage provided by this endorsement.

## IV.

### Declaratory Judgment Action

46. The foregoing paragraphs 6 through 45 of this pleading instrument are incorporated here by reference, the same as if fully set forth verbatim.

47. On or about October 25, 2016, Philadelphia received tenders of the defense of all the Defendants in the two underlying lawsuits. Philadelphia agreed to defend those Defendants, subject to a complete reservation of its rights.

48. Philadelphia is filing this lawsuit to seek a judicial determination that it does not owe any duty to defend Defendants against the claims asserted in either of the underlying lawsuits. Accordingly, pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, Philadelphia petitions the Court for a judgment declaring as follows:

A. Philadelphia Indemnity Insurance Company has no duty to defend Renew Ministries, Inc. or Celebrate Life Church, Inc. against the claims Amy Arp has asserted in Cause No. C2016-1722C, *Amy Arp v. Terry Knighten, Renew Ministries, Inc. and Celebrate Life Church, Inc.*, which is pending before the 274th Judicial District Court of Comal County, Texas.

B. Philadelphia Indemnity Insurance Company has no duty to defend Terry Knighten against the claims Amy Arp has asserted in Cause No. C2016-1722C, *Amy Arp v. Terry Knighten, Renew Ministries, Inc. and Celebrate Life Church, Inc.*, which is pending before the 274th Judicial District Court of Comal County, Texas.

C. Philadelphia Indemnity Insurance Company has no duty to defend Renew Ministries, Inc. or Celebrate Life Church, Inc. against the claims Kristin Harvey has asserted in Cause No. C2016-1723D, *Kristen Harvey v. Terry Knighten, Renew Ministries, Inc. and Celebrate Life Church, Inc.*, which is pending before the 433rd Judicial District Court of Comal County, Texas.

D. Philadelphia Indemnity Insurance Company has no duty to defend Terry Knighten against the claims Kristin Harvey has asserted in Cause No. C2016-1723D, *Kristen Harvey v. Terry Knighten, Renew Ministries, Inc. and*

---

*Celebrate Life Church, Inc.*, which is pending before the 433rd Judicial District Court of Comal County, Texas.

## PRAYER

BASED ON THE FOREGOING, Plaintiff Philadelphia Indemnity Insurance Company requests by this pleading that the District Court Judge adjudge:

(1) That such Plaintiff has no duty to defend Renew Ministries, Inc. or Celebrate Life Church, Inc. against the claims Amy Arp has asserted in Cause No. C2016-1722C, *Amy Arp v. Terry Knighten, Renew Ministries, Inc. and Celebrate Life Church, Inc.*, which is pending before the 274th Judicial District Court of Comal County, Texas;

(2) That such Plaintiff has no duty to defend Terry Knighten Church, Inc. against the claims Amy Arp has asserted in Cause No. C2016-1722C, *Amy Arp v. Terry Knighten, Renew Ministries, Inc. and Celebrate Life Church, Inc.*, which is pending before the 274th Judicial District Court of Comal County, Texas;

(3) That such Plaintiff has no duty to defend Renew Ministries, Inc. or Celebrate Life Church, Inc. against the claims Kristen Harvey has asserted in Cause No. C2016-1723D, *Kristen Harvey v. Terry Knighten, Renew Ministries, Inc. and Celebrate Life Church, Inc.*, which is pending before the 433rd Judicial District Court of Comal County, Texas;

(4) That such Plaintiff has no duty to defend Terry Knighten against the claims Kristin Harvey has asserted in Cause No. C2016-1723D, *Kristen Harvey v. Terry Knighten, Renew Ministries, Inc. and Celebrate Life Church, Inc.*, which is pending before the 433rd Judicial District Court of Comal County, Texas;

(5) That to the extent allowed by law, such Plaintiff recover its reasonable and necessary attorneys' fees; and

(6) That such Plaintiff have such other and further relief, whether at law or in equity, to which it may be justly entitled.

Dated: February 9, 2017

Respectfully submitted,

_____/s/___William R. Pilat_____
William R. Pilat
Texas Bar No. 00788205
Admitted in U.S. District Court, W.D. Tex.
KANE RUSSELL COLEMAN & LOGAN PC
5051 Westheimer Road, 10th Floor
Houston, Texas 77056
Telephone: 713-425-7400
Facsimile:  713-425-7700
E-mail:  wpilat@krcl.com

**ATTORNEY-IN-CHARGE FOR PHILADELPHIA
INDEMNITY INSURANCE COMPANY**